# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**In Re: C.S. & C.S.**

**No. 15-0180** (Wood County 13-JA-101 & 13-JA-102)

**FILED**

August 31, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Father C.S.-1, by counsel Wells H. Dillon, appeals the Circuit Court of Wood County's January 27, 2015, order terminating his parental rights to C.S-2 and C.S.-3.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Christopher S. Dodrill, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Angela Brunicardi-Doss, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner alleges that the circuit court erred in terminating his parental rights without imposing a less-restrictive dispositional alternative and without granting post-termination visitation.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2013, the DHHR filed an abuse and neglect petition against petitioner and the children's mother alleging that he physically and emotionally abused the children and committed domestic violence with their mother. The petition detailed an incident in which petitioner became angry and violent with one of his children's half-siblings, who was nine years

---

[1]Because the children and petitioner share the same initials, the Court will distinguish them using numbers C.S.-1 for petitioner and C.S.-2 and C.S.-3 for the subject children. The circuit court case numbers also serve to distinguish these children. Further, in addition to C.S.-2 and C.S.-3, the circuit court's order terminated petitioner's parental rights, if any he had, to three other children who are not his biological issue. Petitioner does not raise any assignment of error with regard to those children. Therefore, in this memorandum decision, we do not address the circuit court's order with regard to those other children.

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective ninety days after the February 19, 2015, approval date. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below.

1

old at the time and lived in the home. According to the petition, while the child was digging holes as punishment, petitioner grabbed that child, pulled him inside the home, pushed his head into a wall with enough force to create a hole therein, and slapped his face. The children's mother then called police, resulting in petitioner's arrest on domestic battery charges and the instant abuse and neglect proceedings.

In November of 2013, the circuit court held an adjudicatory hearing. At that hearing, petitioner stipulated to the domestic violence alleged in the petition. The circuit court adjudicated him as an abusing parent. He subsequently received a post-adjudicatory improvement period. However, by February of 2014, the circuit court terminated petitioner's improvement period due to noncompliance. The circuit court found that petitioner failed to take a psychological evaluation and a parental fitness evaluation; was noncompliant with a substance abuse evaluation; was noncompliant with his domestic violence education program; and failed to attend parenting and adult life skills classes. In setting the matter for disposition, the circuit court permitted petitioner to continue receiving services until that hearing.

In April of 2014, at the first dispositional hearing, the circuit court found that petitioner had participated in certain services since February of 2014, and therefore, it granted him a dispositional improvement period. Between August and October of 2014, the circuit court held several review hearings to evaluate petitioner's progress on that improvement period. During this time, petitioner appears to have participated in his services.

In December of 2014, at the conclusion of petitioner's dispositional improvement period, the circuit court held two dispositional hearings. The circuit court heard evidence that petitioner, although initially compliant with services, had become noncompliant in recent weeks. Testimony established that he missed visits with the children; failed to attend his domestic violence education classes and individual therapy as required; and failed to comply with drug screening. Based on this evidence and the circumstances of the case, the circuit court found that petitioner failed to follow through with his case plan. As such, it concluded that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future and termination was in the children's best interests. Therefore, the circuit court terminated petitioner's parental rights to the children. This appeal followed.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

2

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner assigns error to the circuit court's order terminating his parental rights without imposing a less-restrictive dispositional alternative and without granting post-termination visitation. First, contrary to petitioner's argument that a less-restrictive dispositional alternative existed (wherein he fails to indicate what less-restrictive alternative should have been imposed), the circuit court had no option but to terminate his parental rights. West Virginia Code § 49-6-5(b)(3) provides that a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Pursuant to West Virginia Code § 49-6-5(a)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and when necessary for the child's welfare.

In this matter, the circuit court properly found that petitioner could not substantially correct the conditions of abuse and neglect in the near future and termination was necessary for the children's welfare. The circuit court was presented with overwhelming evidence that petitioner, although compliant for a portion of the underlying proceedings, was noncompliant with services at the outset and again starting approximately one month before the dispositional hearing. The circuit court heard evidence that he missed visits with the children; failed to attend his domestic violence education classes and individual therapy as required; and failed to comply with drug screening. Even petitioner's counsel admitted that the evidence of noncompliance amounted to "a bit of backslide." We have explained that

> [a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under W.Va. Code [§ ] 49–6–5 (1977) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

Syl. Pt. 1, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980). Moreover, we have explained that

3

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.,* 227 W.Va. 558, 712 S.E.2d 55 (2011). Given petitioner's demonstration of violence towards children and his failure to comply with rehabilitative efforts, we find no error in the circuit court's termination without the use of less-restrictive dispositional alternatives.

As to petitioner's argument that the circuit court erred in denying him post-termination visitation, we have previously held that

"[w]hen parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). We have also held that the word "may" is permissive and connotes discretion. *See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher*, 174 W.Va. 618, 626 n.12, 328 S.E.2d 492, 500 n.12 (1985) (providing that "[a]n elementary principle of statutory construction is that the word 'may' is inherently permissive in nature and connotes discretion.") (citations omitted). In the case sub judice, while petitioner argues that post-termination visitation was required due to his bond with the children and his participation in services, the circuit court found the children's best interests were served by denying post-termination visitation, based on the underlying acts of violence and the children's need for continuity in caretakers and permanency. We note, too, that petitioner did not attend all of his visits with the children during the proceedings below. Following a thorough review of the record on appeal, we find that circuit court did not err in denying such post-termination visitation.

Therefore, we find no error in the circuit court's January 27, 2015, order, and we hereby affirm the same.

Affirmed.

**ISSUED**: August 31, 2015

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II